IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

JOHN COLLINS,

    *Plaintiff*,

v.

CENTRAL RAILROAD OF INDIANA, et al.,

    *Defendants*.

Case No. 1:19-cv-692

Judge Jeffery P. Hopkins

## ORDER

Normally, an employee is rewarded for giving a task some "extra oomph." Not in the case of John Collins. Mr. Collins, a railroad conductor for Central Railroad of Indiana (CIND) injured his shoulder while setting a handbrake on a railcar. He sought compensation from CIND under a federal statute protecting railworkers, but CIND refused to compensate him, saying that he was solely responsible for his injuries because he put extra effort into setting the handbrake, instead of stopping when he felt resistance. For that reason, CIND says, Mr. Collins was the "sole cause" of his injuries. Mr. Collins later sued seeking monetary damages, and CIND filed a Motion for Summary Judgment (Doc. 40) requesting judgment in its favor on the basis that Mr. Collins alone was the sole cause of his injuries.[1] The Court concludes there is a triable issue as to whether CIND's negligence caused Mr. Collins's injuries, and therefore **DENIES** CIND's Motion. Mr. Collins has also filed a Motion for Summary Judgment (Doc. 43) which is also **DENIED** for reasons explained below.

---

[1] This case was originally before Judge Timothy S. Black. On January 3, 2020, it was reassigned to Judge Matthew W. McFarland. On December 21, 2022, it was reassigned to the undersigned.

I. BACKGROUND

Mr. Collins was a conductor for CIND and had been employed by the railroad for eight months at the time he applied the "extra oomph" at issue in this case. *See* Doc. 40, PageID 409. Previously, he worked for another railroad for thirteen years. *Id.*

The incident at issue occurred in the early morning hours of October 4, 2018. Mr. Collins began his shift the previous evening, and was assigned to transport a train from Valley Yard, in Cleves, Ohio, to a Honda facility in Indiana, and to then pick up a different train there, and to finally transport that train back to Valley Yard. *Id.* at PageID 410. Dean Santore, a train engineer, was assigned to transport the train with Mr. Collins. *Id.* All went according to plan during the transport to Valley Yard and the departure from Valley Yard, including the setting and releasing of handbrakes; Mr. Collins needed to release ratchet-style handbrakes on the departing train, and he did so without incident. *Id.* at PageID 410–11.

Mr. Collins and Mr. Santore returned to Valley Yard and when they arrived, Mr. Collins proceeded to set handbrakes on the train they brought there. *Id.* at PageID 411. Mr. Collins successfully set two of the handbrakes, and went to set the third. *Id.* He briefly inspected it and found no issue with it. *Id.* He then used his left hand to tighten the brake. *Id.* (Ratchet-style handbrakes are tightened by pumping them up and down. *Id.* at PageID 410.) He gradually tightened the brake, raising the handle from the 6:00 position, with a clock face as a reference, to the 10:00 or 11:00 position. *Id.* at PageID 411. The handbrake tightened as expected to this point. *Id.*

Then, as Mr. Collins continued to attempt to tighten the brake, the brake released and moved quickly to the 12:00 position, injuring Mr. Collins's shoulder. *See* Doc. 37, PageID 186. Mr. Collins recalls that the brake "was getting tighter and tighter, at which point it just

broke free." *Id.* CIND contends that the ratchet became stuck and stopped moving, and Mr. Collins then pushed it "real hard." Doc. 60, ¶ 9. Mr. Collins says, on the other hand, that the ratchet did not stop moving before it released. Doc. 37, PageID 198. He does not dispute, however, that he noticed the ratchet was not functioning properly and applied additional force to it as a result. *See* Doc. 49-1, ¶ 7 (". . . I attempted to apply additional pressure to the ratchet as it had locked.").

After Mr. Collins injured his left shoulder, he attempted to use his right arm to set a third handbrake and secure the train. Doc. 37, PageID 189–90. He then told Mr. Santore, the engineer, about his injury, and Mr. Santore offered to drive Mr. Collins to the hospital, but Mr. Collins said his wife would pick him up and take him. *Id.* at PageID 193–94. Subsequently, Mr. Collins's wife picked him up and drove him to the emergency room at Dearborn County Hospital. *Id.* at PageID 195. After the injury, but before his wife arrived, Mr. Collins spoke on the phone with his supervisor, Robert Payne. Mr. Payne recalls that Mr. Collins told him that the handbrake became stuck, and then he gave it "extra oomph," at which point it released suddenly. *See* Doc. 40-2, ¶ 3.

Shortly before 3:00 a.m., Mr. Collins arrived at the hospital and saw Dr. Michael Steger. *See* Doc. 37-1, PageID 278. Dr. Steger ordered x-rays of Mr. Collins's shoulder, which came back normal. Doc. 39, PageID 363. After his evaluation, he diagnosed Mr. Collins with a left-shoulder strain with a possible tear. Doc. 39, PageID 365. Dr. Steger also recorded what Mr. Collins told him about the injury.[2] In the "Add[itiona]l Narrative" section of his report on Mr. Collins's emergency room visit, Dr. Steger wrote:

---

[2] Dr. Steger testified that this narrative was based only on what Mr. Collins told him, and he wrote it shortly after speaking to and examining Mr. Collins. Doc. 39, PageID 352.

> [Mr. Collins] is a 46-year-old [white male] who comes to the ER with complaints of a left shoulder injury while at work just [prior to arrival]. He was using a large ratchet apparatus and was pushing it overhead. He felt the ratchet stop moving and so pushed real hard and then the ratchet let go and his [left upper extremity] accelerated upwards. he did not hit anything but felt immediate pain. Now having pain on any movement of the left shoulder and says that he has numbness in the left hand.
>
> Doc. 37-1, PageID 276.

Dr. Steger prescribed Mr. Collins three medications to address swelling and pain in his right shoulder, Doc. 39, PageID 367, and discharged him around 4:00 that morning. Doc. 40-1, PageID 429. He also put Mr. Collins's left arm in a sling and directed him to wear the sling until he saw an occupational therapist. Doc. 39, PageID 383. He further directed that Mr. Collins not return to work until an evaluation by an occupational therapist. Doc. 46-6, PageID 699.

Around the same time that morning, Mr. Payne called Nicholas Longshore, Director of Mechanical for Indiana and Ohio Railway, and asked him to investigate the incident. Longworth Dep. 21:13–22:22, Doc. 46-9, PageID 713–14. Mr. Longshore was experienced in accident investigations, having invested about 100 incidents in his career, three of which involved injuries to employees. *Id.* at 20:24–21:6, PageID 713. He arrived at the scene shortly after 4:00 a.m. and met with Mr. Payne, who asked him to assess the condition of the handbrake involved in Mr. Collins's injury. *Id.* at 23:2–5, PageID 714. Mr. Longworth went to the handbrake and attempted to operate it, but discovered that it "was not acting like any other normal ratchet-style hand brake." *Id.* at 24:4–6, PageID 714. He started to inspect different components of it, but did not immediately identify anything wrong with it. *Id.* at 24:14–15, PageID 714. The third time he attempted to operate the handbrake, he felt it give unusual resistance, and in response he applied "a little bit more force" to see if it would move in response. *Id.* at 24:16–17, PageID 714; 45:1–7, PageID 719. He noted that the handbrake

would move properly for some amount of time and then "bind up," and not move back and forth. *Id.* at 25:1–6, PageID 714. Observing the handbrake had seized up the first time he tried it, moved appropriately the second time, but then seized up again the third time, Mr. Longshore determined that the "brake itself was defective and needed to be replaced." *Id.* at 25:14–16, PageID 714; 29:7–30:8, PageID 715–16.

Mr. Longshore then went about replacing the handbrake. To do so, he moved the car it was on off of the main track and onto a sidetrack. *Id.* at 33:4–9, PageID 716. By 6:30 or 7:00 a.m., that morning, Mr. Longshore had removed the handbrake from the car and replaced it with a new handbrake. *Id.* at 31:8–18, PageID 716; 34:6–10, PageID 717. Later that morning, Mr. Longshore took the faulty handbrake to a repair shop at the railyard and disassembled it to inspect it. Summarizing what he found in an email to other railroad personnel, Mr. Longworth wrote that the handbrake was "inoperable . . . account [of] lack of lubrication and seized parts which caused binding and an injury." Doc. 42-7, PageID 540; *see also* Longworth Dep. 37:4–7, Doc. 46-9, PageID 717. He further recounted that the lack of lubrication had caused corrosion, and that the handbrake had not been lubricated since it was applied on the car—in fact, the lubricating port had been painted over. Mr. Longshore also noted that part of the handbrake had been "worn to a slight oval shape due to lack of lubrication." Doc. 42-7, PageID 540. He then lubricated the internal components of the handbrake and after that, the handbrake operated "just about perfectly." *Id. See also* Longworth Dep. 38:20–39:1, Doc. 46-9, PageID 718. In his deposition, Mr. Longworth testified that the handbrake involved in Mr. Collins's injury was "defective." *Id.* at 52:1–4, PageID 721.

The day after the incident, on October 5, 2018, Mr. Collins looked for an occupational health doctor and found Dr. Matthew Daggy. Collins Dep. 107:10–22, Doc. 37, PageID 202. Mr. Collins went to see him that day, complaining of left shoulder pain. *Id.* at 108:11–14, PageID 203. Dr. Daggy examined Mr. Collins and referred him to physical therapy, with a follow-up appointment in two weeks. Doc. 37-2, PageID 285. He went to physical therapy a week later, Collins Dep. 114:4–9, Doc. 37, PageID 209, then returned to see Dr. Daggy again. *Id.* at 112:21–113:2, PageID 207–08. Mr. Collins continued to have pain in his shoulder, and on a car ride later that month began to have pain in his neck. *Id.* at 118:4–13, PageID 213. Eventually, after Mr. Collins continued to experience neck and shoulder pain, Dr. Daggy referred Mr. Collins to a neurosurgeon, Dr. Burdan. *Id.* at 119:21–120:5, PageID 214–15. Dr. Burdan eventually performed two spine surgeries on Mr. Collins, one in April of 2019 and one in June of 2020. *Id.* at 125:25–127:1, PageID 220–22. Mr. Collins continued to go to physical therapy between those two surgeries and afterward, going to, in his estimation, more than 20 physical therapy sessions. *Id.* at 128:16–20, PageID 223. As of the date of Mr. Collins's August 2020 deposition, he continued to experience pain in his neck and shoulder and took several prescription medications for pain. *Id.* at 129:12–15, PageID 224.

Mr. Collins filed the instant action in August 2019. He seeks damages of $150,000 from CIND under the Federal Employers' Liability Act, 45 U.S.C. § 51 *et seq.* and the Federal Safety Appliance Act, 49 U.S.C. § 20301 *et seq.*

## II.  STANDARD OF REVIEW

CIND is entitled to summary judgment if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as

a matter of law." *Hardyman v. Norfolk & W. Ry. Co.*, 243 F.3d 255, 258 (6th Cir. 2001) (quoting Fed. R. Civ. P. 56(c)). The Court must "view the record and any inferences to be drawn from the underlying facts in the light most favorable to the party opposing summary judgment," but a mere "scintilla of evidence in support of the plaintiff's position" is insufficient to defeat summary judgment; instead, there must be enough evidence that "the jury could reasonably find for the plaintiff." *Id.* (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986) and *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)).

FELA provides an additional wrinkle in the conventional summary judgment analysis, at least where a defendant seeks summary judgment for failure to raise a genuine issue of fact as to causation. FELA's language on causation is "as broad as could be framed." *Urie v. Thompson*, 337 U.S. 163, 181 (1949). *See* 45 U.S.C. § 51 ("Every common carrier by railroad . . . shall be liable in damages to any person suffering injury while he is employed by such carrier . . . for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier . . . ."). As a result, the "test of a jury case is simply whether the proofs justify with reason the conclusion that employer negligence played *any part, even the slightest*, in producing the injury or death for which damages are sought." *CSX Transp., Inc. v. McBride*, 564 U.S. 685, 692 (2011) (emphasis added) (quoting *Rogers v. Missouri P. R.R. Co.*, 352 U.S. 500, 506 (1957)).

### III. LAW & ANALYSIS

The Federal Safety Appliance Act (FSAA) "does not create an independent cause of action for employees injured because of a violation of the Act." *Hudson v. Norfolk S. Ry. Co.*, 1:11-cv-2633, 2013 WL 3149485, at *4 (N.D. Ohio June 18, 2013). A plaintiff can, however, establish entitlement to recovery by proving a violation of the FSAA, because a violation of

the FSAA "can provide the basis for a FELA action." *Id.* Here, Mr. Collins does not plead two separate causes of action but instead two separate paths to recovery on his FELA action. *First,* he argues that CIND's conduct was negligent under common-law standards of negligence, and that its negligence was a cause of his injury, making him entitled to recover under the FELA. *See* Doc. 46, PageID 633–34. *Second*, Mr. Collins contends that CIND violated the FSAA, making it per se negligent under FELA, and that its FSAA-violative conduct caused his injuries, making him entitled to relief. *Id.* at PageID 638. *See also Hudson*, 2013 WL 3149485, at *4 ("In order to recover for a FELA claim precipitated by a violation of the FSAA, a Plaintiff must prove (1) that the FSAA was violated, and (2) that the injuries suffered resulted in whole or in part from the defective equipment.").

CIND and Mr. Collins have both moved for summary judgment. Docs. 40, 43. CIND seeks summary judgment in full, on the grounds that Mr. Collins's own negligence was the "sole cause" of his accident, making it not liable in damages under FELA. Doc. 40, PageID 416. The gravamen of CIND's summary judgment motion does not contest its negligence. *See* Doc. 47, PageID 1078. Rather, CIND posits that "[t]he single question presented on summary judgment is whether Plaintiff's decision to use extra force or 'oomph' after the handbrake stuck, contrary to his training, instead of stopping his attempts to set the handbrake, was the *sole cause* of the handbrake giving way and flying rapidly upwards to the 1:00 position." *Id.* (emphasis added). Mr. Collins moved for summary judgment as to liability only, arguing that it is undisputed that CIND violated the FSAA and he is thus entitled to summary judgment as a matter of law. Doc. 43, PageID 607.

A. CIND'S Motion (Doc. 40)

CIND's Motion presents a remarkably narrow issue for a summary judgment motion. As discussed, CIND offers only one defense in support of its summary judgment motion: that Mr. Collins was the sole cause of the injuries he sustained as a result of the October 4, 2018 handbrake incident. A well-established defense in FELA actions, the "sole cause defense . . . shields a railroad employer from liability . . . if the employee's own negligence was the sole cause of the accident." *Harper v. Norfolk S. Ry. Co.*, 992 F.Supp.2d 795, 807 (S.D. Ohio 2014) (quoting *Toth v. Grand Trunk R.R.*, 306 F.3d 335, 351 (6th Cir. 2002)).

Here, CIND argues strenuously that Mr. Collins was the sole cause of his injuries because had he "acted in a manner consistent with his training, by stopping his attempts the moment the brake hung up and proceeding to the next car to set that handbrake, his alleged injury would not have occurred." Doc. 40, PageID 409. According to CIND, Mr. Collins "cannot meet his burden of proof in establishing proximate cause" and it is entitled to summary judgment. *Id.*

In support, CIND avers that Mr. Collins was trained, by CIND and his previous employer, "that if applying the handbrake would require excessive exertion, he should stop." *Id.* at PageID 418. Thus, when he gave the brake "extra oomph" he acted contrary to his training. *Id.* It further argues that, because Mr. Collins was required to set only three handbrakes, he could have skipped the defective handbrake when he felt resistance and set brakes further down the train, and this would have been consistent with his training. *Id.*

There is both a factual problem and a legal problem with CIND's argument that Mr. Collins's action were inconsistent with his training. As to the factual problem, Mr. Collins testified that his railroad training was "not to use brute force" when setting handbrakes, and

that he was directed "not to overexert." Collins Dep. 68:12–20, Doc. 37, PageID 163. The evidence in the record supports CIND's contention that he applied extra force to the handbrake when he met resistance, *see* Doc. 37-1, PageID 276 (recounting that Mr. Collins said he pushed "real hard"), but not necessarily that he used "brute force" contrary to his training or that he overexerted.[3] Notable in this connection, Mr. Longworth, who investigated the faulty brake, testified that in the course of investigating it he met resistance when operating the brake and applied "a little bit more force" in response. Longworth Dep. 24:17, 45:1–7, Doc. 46-9, PageID 714, 719. This testimony demonstrates clearly that it was not unusual nor contrary to an employee's training for that employee to meet resistance when operating a handbrake and to apply some amount of additional force in response—an employee would only be acting contrary to his training if he applied *excessive* additional force in this setting. The Court is unable to conclude on the record before it that the amount of force Mr. Collins applied was such that he acted contrary to his training.

As to the legal problem, CIND points the Court to no authority holding that where a railroad employee acts contrary to his training, he necessarily is the *sole cause* of his injury. In fact, the relevant authority points the opposite conclusion. An employee can make a mistake, i.e. act negligently, or otherwise act contrary to his training, and nonetheless recover under FELA, so long as his employer's negligence was also a cause of his injury. *First,* it is well-established that FELA rejected the common-law contributory negligence rule, under which a plaintiff's negligence would bar his recovery, in favor of comparative negligence, under which

---

[3] Mr. Payne averred in a declaration that Mr. Collins's using "extra oomph" was "not consistent with his training," Doc. 40-2, ¶ 5, but the Court need not accept this characterization of Mr. Collins's actions as true at the summary judgment stage, as Mr. Collins disputes it. The Court must draw all reasonable inferences in Mr. Collins's favor in evaluating CIND's Motion for Summary Judgment. *See Rochelau v. Elder Living Const., LLC*, 814 F.3d 398, 400 (6th Cir. 2016).

rule a plaintiff's recovery is diminished proportionally to his fault. *Norfolk Southern Ry. Co. v. Sorrell*, 549 U.S. 158, 168 (2007). So, a FELA plaintiff's negligence does not bar his recovery under FELA. *Second*, a plaintiff can violate company policy and recover under FELA. There was once a rule under which a plaintiff's violation of a company rule was a complete defense to a FELA claim—this was known as the "primary duty rule"—but 1939 amendments to FELA did away with that arcane rule. *See Keith v. Wheeling & Lake Erie Ry. Co.*, 160 F.2d 654, 657 (6th Cir. 1947) (explaining "primary duty rule" in which "contributory negligence through violation of a company rule became assumption of risk," but noting that "the 1939 amendment to [FELA] swept away assumption of risk as a defense."); *Sorrell*, 549 U.S. at 168 (2007) ("FELA . . . abolished the assumption of risk defense."). CIND here has "put forth the primary duty rule as an assumption-of-risk argument veiled by a different name," but the Sixth Circuit and the Supreme Court have long since rejected that argument. *Harper v. Norfolk S. Ry. Co.*, 992 F.Supp.2d 795, 807 (S.D. Ohio Jan. 13, 2014).

There being no legal rule stating that an employee who violates a company policy cannot recover under FELA, CIND fails to persuade the Court that it is entitled to summary judgment on Mr. Collins's FELA claim.[4] To recap, Plaintiff has raised a genuine issue of fact

---

[4] The Court is unpersuaded by the cases cited by CIND. It first cites *Haut v. Union P. R.R. Co.*, No. C070419, 2015 WL 9005486 (Cal. Ct. App. Dec. 16, 2015), an unpublished decision from a California state appellate court, but that case is procedurally inapposite. The court in that case allowed plaintiff's FELA claim to go to a jury, and when the jury ruled for the railroad, agreeing with its sole cause defense, the court denied the employee's post-trial motion for judgment as a matter of law. This case does not support CIND's effort to prevent this case from going to a jury.

In *Hughlett v. Oglebay Norton Marine Servs Co., LLC*, plaintiff failed to raise a genuine issue of fact as to whether the shipping company for which he worked was negligent. The Court agreed with defendant that "there was no breach of duty" and for that reason plaintiff "was the sole cause of his injuries." No. 1:04-cv-01821, 2007 WL 781327 at *3 (N.D. Ohio Mar. 12, 2007). The case thus differs from the instant case, where CIND seeks summary judgment despite not contesting negligence for purposes of its summary judgment motion.

as to whether CIND was negligent—CIND does not contest this point. The uncontroverted evidence indicates he was injured while operating that handbrake. And under FELA, "the test of a jury case is simply whether the proofs justify with reason the conclusion that employer negligence played any part, *even the slightest*, in producing the injury or death for which damages are sought." *CSX Transp., Inc. v. McBride*, 564 U.S. 685, 692 (2011) (quoting *Rogers v. Missouri Pacific R. Co.*, 352 U.S. 500, 506) (emphasis added). Mr. Collins has met that burden here.

B. Mr. Collins's Motion (Doc. 43)

Mr. Collins seeks summary judgment in his favor as to liability only. Doc. 43, PageID 606. In support, he asserts that there is no genuine issue of material fact as to whether CIND violated the FSAA and the Locomotive Inspection Act, "and thus he has established liability under FELA. He notes that the FSAA requires that railroads maintain cars with "efficient hand brakes," *see* 49 U.S.C. § 20302, and that a violation of this provision can be shown either by establishing "some particular defect" or by showing "a failure to function, when operated with due care in the normal, natural, and usual manner." *Myers v. Reading Co.*, 331 U.S. 477, 483 (1947). Mr. Collins contends there is no genuine issue of fact as to whether there was a

---

Similarly, in *Kelson v. Central of Georgia R.R. Co.*, a case from a Georgia appellate court, Plaintiff offered "mere conclusory allegations of negligence" by his railroad employer. 234 Ga. App. 200, 207 (Ga. App. 1998). Here, the allegations of negligence are well-supported.

Finally, in *Duron v. Western R.R. Builders Corp.*, 886 F.Supp. 1538 (D.N.M. 1994), plaintiff also failed to offer record evidence of negligence by defendant. He first claimed negligence in the form of failure to train him regarding certain hazards, but the Court concluded this was not a cause of his injury because he already knew of those hazards. *Id.* at 1543. CIND's other allegations of negligence "d[id] not reference, nor [were] they supported by, affidavits, depositions, answers to interrogatories or other evidence." *Id.*

"particular defect" in the handbrake at issue and as whether that defect caused his injuries, so he is entitled to liability.[5]

As it does in supporting its motion for summary judgment, CIND focuses exclusively on causation and does not contest Mr. Collins's argument that the handbrake was defective. Doc. 44, PageID 613–15. It argues instead that Mr. Collins failed to establish that there is no genuine issue of fact regarding its sole cause argument. *Id.* at PageID 613–14. In this context, CIND's causation argument prevails. As CIND explains, to prevail on a FSAA-based FELA claim, Mr. Collins must prove "(1) that the FSAA was violated, and (2) that the injuries suffered resulted in whole or in part from the defective equipment." *Hudson v. Norfolk S. Ry. Co.*, No. 1:11-cv-2633, 2013 WL 3149485 (N.D. Ohio June 18, 2013). So, to be granted summary judgment as to liability, Mr. Collins must show there is no genuine dispute of material fact as to whether the defective handbrake caused his injuries.

He fails to make that showing. As the Court rejected CIND's argument that Mr. Collins definitively was the sole cause of his injuries, so it also rejects Mr. Collins's argument that he definitively *was not* the sole cause of his injuries. Instead, the Court concludes that the issue of causation is properly submitted to the jury.[6] As noted above, the "test of a jury case is simply whether the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury or death for which damages are

---

[5] Mr. Collins also argues that CIND violated the Locomotive Inspection Act, 49 U.S.C. § 20701. *See* Doc. 43, PageID 606. Like the FSAA, this statute does not create an independent cause of action for injuries but instead, a violation of the Locomotive Inspection Act can support FELA liability. *See Szekeres v. CSX Transp., Inc.*, 731 F.3d 592, 599–601 (6th Cir. 2013). Because CIND does not contest the FSAA-violation claim for purposes of summary judgment, the Court need not address its argument related to the Locomotive Inspection Act claim. *See* Doc. 48, PageID 1097–98. This argument is not necessary to dispose of Mr. Collins's Motion, which is denied on the grounds that there is a genuine issue of material fact as to causation, as explained herein.

[6] Mr. Collins's Reply in support of his Motion appears to support this course of action, as he writes: "Defendant's claim of sole cause is without merit. Each and every one of their allegations although ridiculous on their own and is directly refuted by Plaintiff. Thus, making them *contested material facts* in this matter. Doc. 49, PageID 1109 (emphasis added).

sought." *CSX Transp., Inc.*, 564 U.S. at 692 (citation omitted). This is just that—a jury case.[7] The Court acknowledges that it in some cases a FELA plaintiff may be entitled to summary judgment in spite of a sole cause defense offered by the defendant. *See Lyke v. Montana Rail Link, Inc.*, No. CV 22-147-BLG-TJC, 2024 WL 3227141, *4–*6 (D. Mont. June 28, 2024) (collecting cases); *see also Chapman v. Norfolk S. Rwy. Co.*, 612 F.Supp.3d 730, 738–39 (S.D. Ohio Apr. 6, 2020). Here, however, CIND has offered consistent testimony to support its sole cause argument. It argues that Mr. Collins applied "excessive or brute force . . . counter to his training" and this application of excessive force was the sole cause of his injury. Doc. 48, PageID 1097. A reasonable jury could credit this argument and render judgment for CIND on that basis.

## IV.  CONCLUSION

For the foregoing reasons, CIND's Motion for Summary Judgment (Doc. 40) and Mr. Collins's Motion for Summary Judgment (Doc. 43) are **DENIED**.

**IT IS SO ORDERED.**

June 26, 2025

Jeffery P. Hopkins
United States District Judge

---

[7] Importantly, the Supreme Court observed that FELA is to be interpreted to effectuate the intent of Congress to "secure the right to a jury determination." *Rogers v. Missouri Pac. R. Co.*, 352 U.S. 500, 509 (1957). And further: "The decisions of this Court . . . teach that the Congress vested the power of decision in these actions exclusively in the jury in all but the infrequent cases where fair-minded jurors cannot honestly differ whether fault of the employer played any part in the employee's injury." *Id.* at 510. To grant summary judgment to a FELA plaintiff where causation is genuinely contested would be inconsistent with this directive—just as it would be inconsistent to grant summary judgment to a FELA defendant in such a case.